IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER P. MCGIRT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-038 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Christopher P. McGirt ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

On September 23, 1994, when Plaintiff was five years old, he protectively applied for SSI, and was found disabled as of September 1, 1994, with a diagnosis of mental retardation. Tr. ("R."), 372-373. When Plaintiff turned eighteen, the Social Security Administration redetermined his eligibility for benefits as an adult, pursuant to 42 U.S.C. 1382(a)(3)(H). R.

47-51, 348. The Social Security Administration determined Plaintiff did not meet the definition for disability for adults initially and on reconsideration. R. 49, 54, 56. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on August 24, 2009. R. 348-56. The ALJ issued an unfavorable decision, finding Plaintiff's disability ended on September 1, 2007 because Plaintiff did not have the required IQ score. R. 348-56. Plaintiff requested review of the decision and on July 13, 2011, the Appeals Council vacated the ALJ's decision because the ALJ improperly relied on the highest IQ score of various tests instead of the lowest score, and remanded for further proceedings. R. 40-42.

The ALJ conducted a second hearing on April 12, 2012. R. 561-75. At the hearing, the ALJ heard from Plaintiff, who was represented by counsel, Plaintiff's mother, and James Waddington, a Vocational Expert. Id. At the time of the hearing, Plaintiff was twenty-three years old, had completed the twelfth grade, and was working part-time as a bag boy at Kroger. R. 564-66. On May 22, 2012, the ALJ issued an unfavorable decision. R. 18-31.

The ALJ applied the five-step sequential process required by 20 C.F.R. § 416.920(a). However, because this was a redetermination case, the ALJ did not apply Step One of the sequential process, whether Plaintiff had engaged in substantial gainful activity since his alleged onset date. See 20 C.F.R. §§ 416.920(a), 416.987(b). Applying the remaining steps, the ALJ found:

1. The claimant attained age eighteen on March 30, 2007, and was eligible for SSI benefits as a child for the month preceding the month in which he attained age eighteen. The claimant was notified that he was found no longer disabled as of September 1, 2007, based on a redetermination of disability under the rules for adults who file new applications.

2

2. Since September 1, 2007, the claimant has had the following severe impairments: history of seizure disorder; history of asthma; and borderline intellectual functioning ("BIF") (20 C.F.R. 416.920(c)).

3. Since September 1, 2007, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that since September 1, 2007, the claimant has had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can understand, remember, and complete simple instructions and maintain concentration and attention for the completion of simple instructions. He can interact appropriately with coworkers, supervisors, and the public. He can deal with changes in a routine work setting and is best suited for low stress jobs. Due to claimant's history of seizures, he should avoid working around unprotected heights and dangerous equipment. Due to claimant's history of asthma, the claimant should avoid concentrated exposure to dust, fumes, and pulmonary irritants. The claimant has no past relevant work (20 C.F.R. § 416.965).

5. Since September 1, 2007, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including laundry worker and mail clerk (20 C.F.R. §§ 416.969 and 416.969(a)). The claimant's disability ended on September 1, 2007, and the claimant has not become disabled again since that date (20 C.F.R. §§ 416.987(e) and 416.920(g)).

R. at 20-31.

When the Appeals Council denied Plaintiff's request for review, R. at 4-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is erroneous because the ALJ improperly found that Plaintiff did not meet Listing 12.05(C). (See doc. no. 14 ("Pl's Br."),

pp. 13-22.) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 15 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the

4

claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues that he meets Listing 12.05(C) because (1) the ALJ cited the improper legal standard from Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997), which requires Plaintiff to show that he has current deficits in adaptive behavior instead of deficits in adaptive functioning before the age of twenty-two, (2) under the theory of *res judicata*, the ALJ was bound by the earlier disability determination finding that Plaintiff had deficits in adaptive functioning prior to turning eighteen, and (3) Plaintiff meets the definition of mental retardation in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, ("DSM-IV") because he has deficits in at least two areas of adaptive functioning. (See doc. no. 14 ("Pl's Br."), pp. 13-22.)

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify

---

[1] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton, 120 F.3d at 1219 (11th Cir. 1997).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

However, "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with the other evidence regarding the claimant's daily activities and behavior." Harris v. Comm'r of Soc. Sec., 505 F. App'x 874, 876 (11th Cir. 2013). Thus, to meet Listing 12.05(C), there must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; (3) onset before age 22; and (4) the requisite deficits in work-related functioning. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir. 2001)). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Here, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05(C) because he did not have significant deficits in adaptive functioning. R. 24-25. Specifically, the ALJ found that Plaintiff (1) has a driver's license and drives up to twenty-five miles per week, (2) is independent with self-care tasks, including dressing and bathing himself, (3) cooks simple meals, (4) performs household chores, (5) attends church, (6) watches television, (7) socializes with friends, including playing basketball, bowling, and going to the mall, and (8) cares for his puppy. R. 25, 112, 125, 144, 203-04, 397, 401, 511, 513, 534-36, 538. Plaintiff can also read, write, do basic arithmetic, graduated high school with a special education diploma after taking a mix of regular and special education classes, and had been able to maintain employment, which was sheltered to some degree, as a bag boy at Kroger since 2007. R. 25, 565-66.

### A. The ALJ Applied the Correct Legal Standard.

Plaintiff first argues that the ALJ erred in relying on Crayton when evaluating whether he met Listing 12.05(C) because Crayton erroneously requires the Plaintiff to show that he has current deficits in adaptive functioning. Plaintiff's argument is without merit. The Eleventh Circuit frequently relies on Crayton and its list of requirements to show satisfaction of Listing 12.05(C). See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910 (11th Cir. 2015); Perkins., 553 F. App'x at 873; Harris, 505 F. App'x at 876.

### B. *Res Judicata* Does Not Bar the ALJ's Determination that Plaintiff Lacks Significant Deficits in Adaptive Functioning.

Plaintiff next argues that, because Plaintiff was previously found disabled under 112.05 as a child, under *res judicata*, the Commissioner was bound by the earlier finding that Plaintiff had deficits in adaptive functioning before he turned eighteen. (Pl's Br., p. 16.) Plaintiff's

argument is incorrect for four reasons. First, as discussed above, the Listing requires current deficits in adaptive functioning, not only that he manifested adaptive deficits prior to age twenty-two. See Frame, 596 F. App'x at 910.

Second, Plaintiff must show an inability to work due to a medically determinable impairment during the relevant period, which in the present appeal runs from the date Plaintiff turned eighteen years old through the date of the ALJ's decision. See 42 U.S.C. § 1382(a)(3)(H). Plaintiff's childhood disability application concerned a different period. When "the factual time period for [the claimant's] current application is different from [the] previous application, administrative *res judicata* does not apply." Luckey v. Astrue, 331 Fed. App'x. 634, 638 (11th Cir. 2009); see also McKinzie v. Commissioner of Social Security, 362 Fed. App'x. 71, 73 (11th Cir. 2010); Guerrero v. Astrue, No. 8:09-CV-1836-T-TGW, 2010 WL 3360603, at *3 (M.D. Fla. Aug. 25, 2010).

Third, if *res judicata* bound the Commissioner to a finding that Plaintiff is disabled because he was found disabled as a child, redeterminations actions would be rendered moot. The Social Security Act negates the potential application of *res judicata* in these situations because the claimant may be found not now disabled even though he was previously found disabled. 20 C.F.R. 416.987(a)(2). Fourth, *res judicata* does not apply because the standards of disability for adults and children are different. Under redetermination actions, the Plaintiff is reassessed "by applying the criteria used in determining initial eligibility for individuals who are age 18 or older." 42 U.S.C. 1382c(a)(3)(H)(iii).

### C. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Satisfy Listing 12.05(C).

Lastly, Plaintiff argues that he satisfies Listing 12.05(C) because he meets the definition for mental retardation in the DSM-IV by having deficits in at least two of the following areas of adaptive functioning: (1) communication, (2) self-care, (3) home living, (4) social/interpretation skills, (5) use of community resources, (6) self-direction, (8) work, (9) leisure, (10) health, and (11) safety. (Pl's Br., pp. 13-14, 16-17.) Plaintiff states that he has deficits in the areas of home living, functional academic skills, and work.

As to home living, Plaintiff points to his mother's testimony that (1) he cannot live on his own because he cannot even cook a hot dog, (2) he can only focus on one task at a time, (3) he functions at a twelve or thirteen year old's age, and (4) he continues to participate in the Special Olympics. (Pl's Br., p. 16.) Plaintiff also points to his own testimony that he does not cook, does not wash clothes, and does not believe he can live on his own (Id.) As to functional academic skills, school records purportedly contain a statement by a special education teacher that Plaintiff had a mild intellectual disability and he was placed in special education. Additionally, Dr. Marvin Long, consultative mental health examiner, found in 2007 and 2011 that Plaintiff scored in the fifth to seventh grade equivalency on the Wide Range Achievement Test. (Id.) As to work functioning, Angel Ricks, Manager at Kroger Company, submitted affidavits in 2009 and 2012 stating that Plaintiff received job coaching from the Easter Seals Agency for two months to learn to be a bag boy. (Id. at 16-17.) Kroger attempted to make Plaintiff a stocker, but he could not perform up to industry standards, and Mr. Ricks did not believe Plaintiff could progress beyond being a bag boy.

(Id. at 17.)  Additionally, Mr. Ricks testified, and the ALJ acknowledged, that Plaintiff's job as a bag boy was "sheltered work."  (Id.)

However, Plaintiff's argument is inapposite to the ALJ's finding he did not meet Listing 12.05(C).  First, although the language of Listing 12.05(C) closely tracks the language in the DSM-IV, because Plaintiff must satisfy all of the specified criteria in the social security regulations to meet Listing 12.05(C), whether he meets the DSM-IV definition of mental retardation is irrelevant.  See Sullivan, 493 U.S. at 530.

Second, Plaintiff's argument is without merit even if the Court was to construe it as asserting the ALJ erroneously determined under the Listing itself that Plaintiff did not have deficits in adaptive functioning because he has deficits in home living, academic skills, and work.  As discussed above, substantial evidence supports the ALJ's decision that Plaintiff does not have deficits in adaptive functioning.  Indeed, despite the testimony of Plaintiff and his mother about his home living, the ALJ properly cited evidence in the record that Plaintiff (1) has a driver's license and drives up to twenty-five miles per week, (2) is independent with self-care tasks, including dressing and bathing himself, (3) cooks simple meals, (4) performs household chores, (5) attends church, (6) watches television, (7) socializes with friends, including playing basketball, bowling, and going to the mall, and (8) cares for his puppy.  R. 25, 112, 125, 144, 203-04, 397, 401, 511, 513, 534-36, 538.

Additionally, as to Plaintiff's academic skills, the ALJ noted that these Wide Range Achievement Test scores were in the low average to average range.  R. 25.  Moreover, in 2007 and 2010, Dr. Long stated that while Plaintiff scored in the mild deficient range overall his "general ability was more in the borderline range." R. 24, 205, 205A, 512, 514.  Likewise, in

2011, Dr. Thomas Rumble, Plaintiff's treating psychiatrist, diagnosed Plaintiff with BIF. R. 398, 399, 401. In 2006, examining physician Dr. Michael Rose diagnosed Plaintiff with BIF. R. 201. The ALJ also found that Plaintiff can read, write, do basic arithmetic, and graduated high school with a special education diploma after taking a mix of regular and special education classes. R. 25, 565-66.

Lastly, the ALJ found that, despite Plaintiff's employment being "sheltered" work, Plaintiff's ability to maintain employment for more than five years demonstrated that he did not have deficits in adaptive functioning when viewed in conjunction with his other activities of daily living and clinical psychological findings. R. 25, 565-66.

Plaintiff challenges the ALJ's reliance on several cases cited in his decision for examples of cases where the ALJ determined the claimant did not have deficits in adaptive functioning. See Garrett v. Astrue, 244 F. App'x 937 (11th Cir. 2007); Davis v. Astrue, No. CIV.A. 2:07CV880-TFM, 2008 WL 2939523, at *1 (M.D. Ala. July 25, 2008); Kroger v. Astrue, No. CIV. 11-4012-KES, 2012 WL 472900, at *1 (D.S.D. Feb. 13, 2012). Plaintiff asserts these cases are inapplicable because the facts differ from the present case. They are sufficiently analogous to warrant citation.

In Garrett, the claimant was able to cook simple meals, perform chores such as washing dishes and yard work, build model cars, attend church, watch television, play cards, and walk in the mall. 244 F. App'x at 939. Here, the ALJ found that Plaintiff (1) cooks simple meals, (2) performs household chores, including washing dishes and cutting grass, (3) attends church, (4) watches television, and (5) socializes with friends, including playing basketball, bowling, and going to the mall. R. 25, 204, 511, 513, 534-36, 538.

12

In Davis, the claimant had completed the twelfth grade, was able to read, write, and perform simple math, had a driver's license, had some training in cosmetology and secretarial skills, and performed semi-skilled employment. 2008 WL 2939523, at *3. Here, the ALJ found Plaitniff (1) has a driver's license and drives twenty-five miles per week, (2) graduated high school with a special education diploma after taking a mix of regular and special education classes, (3) can read, write, and perform basic arithmetic, and (4) had been able to maintain employment, which was sheltered to some degree, as a bag boy at Kroger since 2007. R. 25, 533, 535, 565-66.

Likewise, in Kroger, the claimant was a high school graduate. 2012 WL 472900, at *14. Here, Plaintiff testified that he graduated high school with a special education diploma after taking a mix of regular and special education classes. R. 565.

In sum, the ALJ's determination that Plaintiff did not meet Listing 12.05(C) because he did not have deficits in adaptive functioning is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of July, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA